## CHILDERS v. CHILDERS.

Court of Appeals of Kentucky.
Nov. 21, 1951.

O. T. Hinton, Pikeville, for appellant.
J. A. Runyon, Pikeville, for appellee.

CULLEN, Commissioner.

Steve Childers was granted a divorce from his wife, Kathellen, on the ground of cruel and inhuman treatment. Kathellen was awarded custody of their infant daughter (born during the pendency of the action), and Steve was ordered to pay $25 per month for the support of the child. He was also required to pay his wife's hospital bill in the amount of $152, incurred at the time of her confinement, and the wife's attorney fee in the amount of $100. No alimony was allowed.

Kathellen appeals, claiming that she is entitled to alimony. It appears that Steve's earnings, as a coal loader, average $200 per month, and Kathellen asks for $75 per month as alimony.

At the time of the marriage, Kathellen was 15 and Steve was 18. They lived together four months, and then separated.

Steve's testimony was that Kathellen was quarrelsome; that she stated many times she wanted a divorce and was dissatisfied

with married life, and on one occasion threatened to "poison him in his food" if he would not give her a divorce; that she called him names; that she left their home and returned to the home of her parents because "she wasn't satisfied with married life and wanted a divorce and she didn't like married life;" and that he had begged her many times after the separation to return to him but she refused to have anything to do with him. On the trial, Steve expressed the desire to be reconciled, but Kathellen rejected all suggestions of reconciliation.

Kathellen's testimony was that Steve was quarrelsome; that he was the one who asked for a divorce; that he compelled her to carry water from the creek for household purposes; that he brought into the house, as a roomer and boarder, a young man named Kidd, and when, after three weeks, she told Kidd to move out, Steve swore at her and told her she could leave too; and that after Kidd moved out, Steve cut off her credit at the grocery stores and refused to buy any food, with the result that she was compelled, after a few days, to return to her parents' home.

About two months before the final separation, Kathellen spent a week or ten days at her parents' home. This apparently was due to an argument growing out of her going to town to get a permanent wave. Steve says that she went to her parents' home of her own volition, and refused to come back until he came and begged her to return. She says that when she returned from town, Steve had taken his clothes and left, and had locked the door, with the result that she had no place to go other than her parents' home.

From the evidence, we receive the impression that Kathellen was unwilling to assume the responsibilities of marriage, and that she found the burden of being a housewife distasteful.

Although we have considerable doubt as to the sufficiency of the evidence to sustain the granting of a divorce to the husband, we believe the chancellor was justified in concluding that Kathellen left her husband's home without sufficient cause, and that she was primarily responsible for the separation. Her refusal to be reconciled appears to be based solely on her unwillingness to live with her husband, and is not justified by any wrongful or cruel conduct on his part.

We have held several times that a wife who leaves her husband's home without cause is not entitled to alimony. Sallee v. Sallee, 298 Ky. 677, 183 S.W.2d 940; Gilbert v. Gilbert, 149 Ky. 638, 149 S.W. 964.

Judgment is affirmed.